1

2

3

4

5

6

7                          IN THE UNITED STATES DISTRICT COURT

8                        FOR THE EASTERN DISTRICT OF CALIFORNIA

9    JACOBY POPE,

10              Plaintiff,                         No. CIV S-11-0101 LKK GGH P

11         vs.

12   R. GARCIA, et al.,                            <u>ORDER</u>

13              Defendant.

14   _____/

15   <u>Introduction</u>

16              By order, filed on April 5, 2012, the court directed defendant Garcia, within

17   fourteen days, to file a response to plaintiff's March 26, 2012 motion for a preliminary injunction

18   asking the court to enjoin defendant Garcia and "all other persons acting in concert" with the

19   defendant, including "supervisors, agents and employees ... from harassing, retaliating, removing

20   from assignments, segregating and transferring plaintiff" while he is exercising his First

21   Amendment right to pursue this civil rights action.  <u>See</u>, motion for preliminary injunction, filed

22   on March 26, 2012 (docket # 37, p. 2).  Defendant Garcia filed a timely response on April 18,

23   2012 (docket # 45).

24   <u>Underlying Complaint</u>

25              This matter proceeds only as to defendant Garcia, who filed his answer on

26   September 15, 2011.  As to the four other named defendants, these parties were dismissed

1

following the filing of their (unopposed) motion to dismiss, pursuant to the district judge's order,

filed on December 20, 2011 (adopting the October 6, 2011, findings and recommendations of the

undersigned).[1]  The gravamen of plaintiff's complaint is that defendant Garcia's alleged

interference with plaintiff's legal mail ultimately deprived him of his right of access to the courts

to challenge his conviction, from which he is now procedurally barred.  <u>See</u> Complaint.  To the

extent that plaintiff asserts in his pending motions that he has also made a claim of retaliation in

his complaint, the court agrees with defendant that there is no such colorable claim framed within

the complaint; while plaintiff made therein vague allegations of harassment by defendant Garcia,

as well as by defendants who have since been dismissed, plaintiff himself explicitly framed and

focused his claim as one wherein he "has been deprived of his right of meaningful access to the

court... ."  Complaint, p. 7.  The claim against defendant Garcia is that he was an officer in the

Institutional Gang Investigation (IGI) unit who brought plaintiff a mini VHS cassette, on May 29,

2009, that he told plaintiff he had retrieved from a legal box that had been mailed to plaintiff by

an attorney named Paul Echols.  Complaint, p. 4.  Plaintiff told defendant Garcia he had violated

his rights in opening and inspecting plaintiff's legal mail.  <u>Id.</u>  Plaintiff asked why defendant

Garcia from IGI would deal with his legal mail which is regularly handled by a 3rd watch floor

officer from to 2:00 p.m. to 10:00 p.m. and also asked Garcia why he and his colleagues from the

IGI unit had been harassing him lately.  <u>Id.</u>  Defendant Garcia allegedly responded "It[']s fun and

besides who's gonna stop me[,] you?"  <u>Id.</u>

        Defendant Garcia then forced plaintiff to sign a trust withdrawal for the VHS

cassette to be sent back.  Complaint, p. 4.  Plaintiff contends that the attorney, Paul Echols, was

hired by plaintiff's father to mail the legal box and when it was returned, his father was unable to

afford having it mailed back again.  <u>Id.</u>, at 5.  It is not entirely clear what was on the tape.

Plaintiff at one point simply states that it "contained [his] interrogation" (<u>id.</u>, at 4) by which the

---

[1] Neither party filed objections.

1   court infers that he means a police interrogation related to the criminal conviction for which he is

2   currently serving a sentence.  Plaintiff states that his inability to receive the box made it

3   impossible for him to challenge his conviction adequately and that he is now procedurally barred

4   from challenging his conviction in federal court.  Id., at 5-6.  Plaintiff seeks declaratory and

5   injunctive relief as well as punitive money damages.  Id., at 7-8.

6   Plaintiff's Motion for Preliminary Injunction Properly Construed as Motion for Protective Order

7               Upon close review, the court construes plaintiff's motion for injunctive relief as a

8   motion for a protective order, and therefore properly before the undersigned for disposition by

9   order.  Local Rule 302 of the Eastern District of California authorizes magistrate judges to handle

10  all aspects of a prisoner's case short of jury trial.  This rule reflects the contours of magistrate

11  judge authority established by Congress.  Pursuant to Section 636, Title 28, United States Code,

12  magistrate judges may determine any pretrial matter unless it is "dispositive" to the action, see

13  United States v. Raddatz, 447 U.S. 667, 673, 100 S. Ct. 2406 (1980), or seeks injunctive relief of

14  the same character as that which may be finally granted by the action, see De Beers Consolidated

15  Mines, Ltd. v. United States, 325 U.S. 212, 219-200, 65 S.Ct. 1130 (1945).  See 28 U.S.C. §

16  636(b)(1)(A).

17               A proper motion for injunctive relief must relate to the allegations of the

18  complaint and seek an outcome that may ultimately be available in the action.  If there is no such

19  relation, injunctive relief is not properly sought.  "[T]he purpose and effect of the injunction is to

20  provide security for performance of a future order which may be entered by the court."  De Beers,

21  at 219-220.  "Thus, a party moving for a preliminary injunction must necessarily establish a

22  relationship between the injury claimed in the party's motion and the conduct asserted in the

23  complaint."  Devose v. Herrington, 42 F.3d 470, 471 (8th Cir.1994) (affirming district court's

24  order denying without hearing plaintiff's motion for preliminary injunction on the ground that it

25  had "nothing to do with preserving the district court's decision-making power over the merits of

26  [plaintiff's] 42 U.S.C. § 1983 lawsuit") (citation omitted); cf., State of New York v. United

States Metals Refining Co., 771 F.2d 796, 801 (3rd Cir. 1985) (affirming district court's order granting preliminary injunction because relief requested was also available to the court pursuant to final judgment, making the distinction that "this is not a case where the preliminary injunction 'deals with a matter lying wholly outside the issues in the suit,' De Beers, 325 U.S. at 200 []"). Rule 65, Federal Rules of Civil Procedure, governing requests for injunctive relief, underscores this relevance requirement, pursuant to provisions allowing the hearing on preliminary injunction to be accelerated into a trial on the merits, preserving the right to jury trial if otherwise appropriate, and making evidence received at the hearing on preliminary injunction admissible at trial. None of these provisions would make sense if disputes outside the complaint, and on which no trial will be had, could be considered as proceedings for injunctive relief.

Accordingly, since matters appropriate for injunctive relief (and therefore expressly outside the dispositive authority of the magistrate judge) are limited to the merits of an action, see, e.g., Reynaga v. Camisa, 971 F.2d 414, 416 (9th Cir. 1992) (orders pursuant to § 636(b)(1)(A) may not include "motions for injunctive relief"), it follows that *improper* requests for injunctive relief, addressing matters extraneous to the complaint, may be addressed and finally determined by the magistrate judge. Such matters typically filed by plaintiff/prisoners attempt to have the court regulate every term and condition of their confinement simply because they are "in court," regardless of the relation of the currently challenged activity to the claims set forth in the complaint.

In this case, plaintiff asks the court to enjoin non-parties from obstructing his ability to prosecute this case. Although plaintiff seeks to implicate the only remaining defendant in this case, plaintiff is unable to show that any action on his part is even tangentially related to plaintiff's allegation in the underlying complaint that defendant Garcia interfered with his right of court access with respect to a potential court challenge to his commitment offense.

In moving for a protective order, plaintiff must make a good cause showing that without it, he would be significantly impeded from litigating this action. "For good cause to

1  exist, the party seeking protection bears the burden of showing specific prejudice or harm will

2  result if no protective order is granted." Phillips ex re. Estates of Byrd v. General Motors Corp.,

3  307 F.3d 1206 1210-11 (9th Cir. 2002).  The focus of the harm in protective order situations is

4  harm to the ability to litigate, not irreparable harm to the plaintiff.

5              *Argument*

6              *Motion*

7              Plaintiff contends in his motion that he has been subjected to a campaign of

8  retaliatory conduct and harassment prior to and after the filing of his complaint, including being

9  placed in administrative segregation (ad seg) on several occasions without a 115 serious rules

10  violation report (RVR), resulting in plaintiff's being separated from his legal work at critical

11  points during the discovery process.  P.I. Motion (docket #37), p. 6.  Specifically, plaintiff sets

12  forth in his supporting declaration that on August 17, 2011, he was placed in ad seg pending

13  investigation based on unreliable confidential information and without his legal property.

14  Plaintiff's Declaration in Support of P.I. Motion (docket # 37), p. 9, ¶ 3.  Plaintiff was released to

15  B-facility from ad seg at the end of September 2011, without an RVR having been issued and

16  only received his property back in mid-October 2011.  Id.  Plaintiff states that he was again

17  placed in ad seg on November 4, 2011, without his legal property based once more on unreliable

18  confidential information unrelated to the prior placement pending investigation and was later

19  released on December 14, 2011, again without an RVR.  Id., at ¶ 4.  Plaintiff states that thereafter

20  he was placed on a yard that was on lockdown due to a recent riot which had no movement when

21  he was originally told he would be sent back to the yard he had been on previously.  Id.  Plaintiff

22  states that while he was in ad seg, he "became aware of falsified documentation authored by a

23  prison correctional officer" from defendant's current or prior unit which had been circulated

24  through the entire institution in an effort to do plaintiff harm.  Id., at ¶5.  The court notes the

25  vagueness of this accusation.

26  \\\\\

1    Plaintiff declares that upon receiving his property in January of 2012, he

2    immediately mailed out interrogatories and [requests for] production of documents to defendant's

3    counsel on January 5, 2012.  Plaintiff's Dec. in Support of P.I. Motion, (docket # 37), ¶ 6.

4    Plaintiff avers that he had the discovery requests ready for service on defendant prior to being

5    placed in ad seg but that the "retaliatory acts of prison staff" by his placement in ad seg without

6    his property prevented them from being filed (by which the court infers that he meant to say,

7    served).  Id.  Plaintiff avers that on January 10, 2012, he received instructions on how to retain

8    copies of his legal work, but when he sent out for copies of exhibits he intended to serve on

9    defendant in response to his request for production of documents, the exhibits were lost.  Id.

10   Plaintiff filed a January 20, 2012, request for an extension of time to respond to defendant's

11   production requests in this court because the exhibits had been lost and he was on lockdown.  Id.,

12   at 7.  The court here observes that plaintiff was generously granted a thirty-day extension of time

13   by order, filed on January 31, 2012 (docket # 32), even though the deadline for conducting

14   discovery was January 6, 2012, in accordance with the Discovery and Scheduling Order, filed on

15   Sept. 23, 2011 (docket # 27).  Plaintiff states that he has had a hard time getting a response to a

16   grievance about the "mysteriously lost" exhibits because his grievance has been "continuously"

17   screened out.  Id.  Plaintiff maintains that he was forced to refuse to lock up on February 2, 2012,

18   so he could speak to the sergeant whom he had been requesting to see for several days,

19   apparently because he had not yet received his lost documents and he was not being allowed to

20   receive copies and because the first and third watch officers were not signing for his mail to go

21   out and his mail was being delayed.  Plaintiff's Dec. in Support of P.I. Motion, (docket # 37), ¶ 8.

22   In defendant's opposition, however, defendant notes that he (defendant) was served with

23   plaintiff's responses to his requests for production of documents on February 15, 2012.  See

24   Opposition to P.I. Motion, p. 3, footnote 3.  Plaintiff also reports that he received a 115 RVR for

25   delaying staff for which he was found guilty on March 13, 2012.  Id.

26   \\\\\

1    Plaintiff also declares that it was not until March 12, 2012, when he received

2 defendant's opposition to his pending motion to compel that he learned that, according to

3 defendant's counsel, plaintiff's discovery requests had never been received.  Plaintiff's Dec. in

4 Support of P.I. Motion, (docket # 37), ¶ 9.  Thus, plaintiff claims that he was denied his right to

5 court access once again.  Id.  Plaintiff states that his complaint against defendant Garcia was for

6 retaliatory action, as well as deprivation of his right to access the courts, an assertion which is

7 belied by the complaint itself, as set forth above.

8    *Opposition*

9    In his opposing declaration, defendant Garcia states that he was assigned to the

10 Investigative Services Unit (ISU) at California State Prison-Sacramento (CSP-Sac) from August

11 2007 to August 2009.  Declaration of defendant R. Garcia in Opposition (Opp.) to plaintiff's P.I.

12 motion (docket # 45), p. 10, ¶ 3.  Apparently, defendant Garcia has never worked for the IGI,

13 contrary to plaintiff's assertions.  Opp., p. 3, footnote 1.  Defendant declares that in his current

14 capacity he is a Facility A C/O who does not work in Facility C where plaintiff is housed, has

15 "absolutely no contact" with plaintiff, has only seen him once, on May 29, 2009, and does not

16 remember what he looks like.  Opp., Garcia Dec., at p. 11, ¶¶ 6-8.  Touching on the merits of the

17 underlying action, defendant Garcia goes on to declare that the Folsom ISU officer, whom

18 defendant does not name, informed him that a package had been sent to Folsom for plaintiff in

19 error, that the package had been opened before staff had determined plaintiff was not at Folsom

20 and "that they believed the package contained contraband, most likely a cellular phone." Id., at ¶

21 9.  Thereafter, once defendant Garcia retrieved the package and brought it to CSP-Sac's ISU

22 office, defendant contacted attorney Paul Echols who was indicated as the sender, after obtaining

23 his contact information from the California State Bar's website.  Id., at ¶¶ 10-11.  According to

24 defendant Garcia, attorney Echols explained that the package contained legal material pertaining

25 to plaintiff, including the mini VHS cassette, after which defendant informed Mr. Echols that

26 VHS cassette tapes were contraband prohibited to prisoners; the attorney than instructed

7

1  defendant Garcia to send the tape back to his office.  Id., at pp. 11-12, ¶ 12.  Defendant Garcia

2  avers that he then reached into the package and removed the VHS cassette and brought it to

3  plaintiff with a trust account withdrawal slip, informing him that the package had been opened at

4  Folsom because of the belief by the ISU staff there that it contained contraband.  Id., at p. 12,  ¶¶

5  13- 14.  Defendant Garcia states that plaintiff was told that he, Garcia, had contacted the attorney

6  who had sent the package, finding out that there was a mini VHS cassette contained in it and that

7  the tape had to be returned and a trust withdrawal had to be signed to pay for the postage;

8  plaintiff signed for the withdrawal and Garcia states that he brought the tape back to the prison

9  mail room and has not had any other contact since with the plaintiff.  Id., at ¶¶ 14-17.[2]

10          Defendant, in opposition, also includes a declaration from L. Young, a CSP-Sac

11  Correctional Counselor II in the Litigation Office, who states that he/she has reviewed plaintiff's

12  central file and provides the following "true and correct" copies as exhibits:

13  Exhibit (Ex.) A–a March 12, 2010, CDC 114-D ad seg placement notice, indicating plaintiff was

14  placed in ad seg on March 11, 2010, for involvement in a fight necessitating the use of blast

15  dispersion grenades, OC pepper spray and a baton to control the situation.

16  Ex. B-a CDC 114-D issued on April 22, 2010, when plaintiff refused to leave ad seg once he was

17  cleared for return to the general population, thus obstructing the peace officer in his duties.

18  Ex. C-a CDC-115 RVR issued on August 19, 2010, for a July 18, 2010, incident for conspiracy

19  to commit murder, indicating plaintiff was found guilty of passing a note during scheduled

20  visiting hours to a civilian visitor.  The note included plans for drug trafficking in prison and a

21  plot for another inmate to be murdered once the inmate paroled; however, the conspiracy charge

22  was later reduced to conduct which could lead to violence.

23  Ex. D-a CDC-114 issued on July 20, 2010, regarding plaintiff's actions on July 18, 2010, noted

24  immediately above.

25  _____

26  [2] The court observes that there is no ¶ 15 contained in defendant Garcia's declaration, no
doubt an inadvertent omission.

Ex. E-a CDC-115 issued on September 1, 2010, indicating that while plaintiff was housed in ad seg pursuant to the charges identified in Ex. C, he handed a note to a C/O offering $1000.00 for the officer to smuggle in two cell phones.  The note contained the words "snitches get stitches," interpreted as a threat to staff.

Ex. F-a CDC-114 issued on September 12, 2010, because of plaintiff's Sept. 1, 2010 (see immediately above) threat to staff.

Ex. G - a CDC-115 issued on August 5, 2011, for plaintiff having delayed a peace officer's duties by refusing to submit to a cell search and by flushing what appeared to be a cell phone and other contraband.  Thereafter, a cell phone charger was found in the toilet pipes.  The court notes the charge was later reduced to refusing a direct order.

Ex. H- a CDC-114 issued to plaintiff on August 18, 2011, and stating he was being placed in ad seg on August 17, 2011, for the duration of an investigation based on staff's having received confidential information that plaintiff intended to perpetrate a battery on a peace officer and an inmate.

Exh. I - a CDC-115 RVR issued on August 30, 2011, to plaintiff for refusing to accept a housing assignment and delaying a peace officer.

Exh. J - a CDC-114 issued on November 7, 2011, to plaintiff based on his being suspected of involvement in the battery of an inmate during chapel services, for which he was retained in ad seg [apparently as of  November 4, 2011] pending the investigation of this matter.

Exh. K-a CDC-115 RVR issued on February 2, 2012, to plaintiff for his and his cellmate's delaying the duties of a peace officer and causing dis-order by refusing to lock up in their cell. See Declaration of L. Young in Support of Opp. to P.I. motion (docket # 45), pp. 13-16, ¶¶ 1, 3-13 & Exs. A through K.

Declarant Young further avers that the disciplinary records he/she cites are not all of the disciplinary documents retained in plaintiff's central file.  Opp., Young Dec., at ¶ 14. Declarant Young also includes as Ex. L, a copy of plaintiff's CDC-119 mail card at CSP-Sac,

9

1    logging all mail from plaintiff, and at Ex. M, a copy of form entitled "request for legal property,"

2    which is a request from plaintiff, dated August 25, 2011, asking for access to his legal property

3    indicating that he had a court-ordered deadline for the end of September.  Opp., Young Dec., at

4    ¶¶ 15-16.  The mail card indicates that plaintiff was able to mail a document to this court's

5    clerk's office on September 12, 2011, and document or documents to the state superior court on

6    November 21, 2011, as well as two other legal mailings on November 23, 2011 and on December

7    5, 2011, and, as defendant maintains, on 12 occasions in 2012.  Opp., p. 7, citing Young Dec. at

8    ¶ 15.  However, it does not indicate any mailing to defendant's counsel, i.e., re: discovery.

9    Defendant also states that plaintiff made only the one written request, dated Aug. 25, 2011, for

10   legal property while he was in ad seg.  Id., at p. 6, citing Young Dec., at ¶ 16.

11                    *Analysis*

12                    Defendant is correct that plaintiff failed to file any opposition to the motion to

13   dismiss, filed on July 27, 2011, brought on behalf of the defendants who have been dismissed

14   from this action.  Opp., Declaration of M. Wrosch, an attorney in the law firm representing the

15   defendant, p. 72, ¶ 3; see also, docket # 28 and docket # 30.   Declarant Wrosch also avers (at ¶

16   4) that only as of March 5, 2012, was defendant served with plaintiff's interrogatories,

17   referencing docket # 33, which is plaintiff's motion to compel, stamped as filed on March 2,

18   2012, with 21 handwritten interrogatories by plaintiff attached, dated by plaintiff as having been

19   served on January 5, 2012 (as plaintiff claimed in his P.I. motion).  It is true, as defendant asserts,

20   that even had plaintiff served his discovery requests in January of 2012, they would have been

21   untimely as the discovery and scheduling order, setting the discovery deadline as January 6,

22   2012, also stated that all motions to compel were to be filed by that date and all requests for

23   discovery were to be served no later than sixty days before that date, or as defendant maintains,

24   by November 7, 2011.  Opp., Wrosch Dec., p. 73, ¶ 6 ; see also, Discovery and Scheduling

25   Order, docket # 27, p. 6.  Nor is it clear to the court how, once plaintiff was re-united with his

26   property as he avers in mid-October of 2011, he was obstructed from having served his written

                                                     10

1   discovery requests upon defendant before his placement back in ad seg in November of 2011.

2           On the other hand, defendant's position that plaintiff could have had access to his

3   legal property while in ad seg is not particularly persuasive.  On the form of the only written

4   request defendant has identified that plaintiff submitted for his legal property while he was in ad

5   seg, dated August 25, 2011, following his placement there on August 17 of 2011, the following is

6   included: "Note: The Legal Officer will only issue legal property one time, make sure you have

7   what you will need the first time."  Opp., Young Dec., Ex. M, p. 71.  So, although defendant

8   faults plaintiff for only having asked for his legal property once in writing (Opp., Young Dec. ¶

9   16), this note printed on the form appears to belie defendant's representation that plaintiff could

10  have made multiple written requests which would have been successful in obtaining the legal

11  property he sought while he was in ad seg, unless defendant and declarant Young mean that each

12  time he was placed in ad seg plaintiff could have made a written request and failed to do so.

13  Even more to the point, however, it does not appear that this written request actually gained

14  plaintiff the access he sought to his legal property, given that defendant does not contend that

15  plaintiff was granted any such access to his legal property as a result of the request and does not

16  dispute plaintiff's averment that he was not reunited with his legal property until mid-October of

17  2011, following his release from ad seg at the end of September, 2011.

18          Although defendant indeed demonstrates that plaintiff has a lengthy history of

19  prison disciplinary charges and convictions, his evidence does not fully refute plaintiff's

20  representation that he was placed in ad seg on August 17, 2011, and again on November 4, 2011,

21  on charges or suspicions that were not ultimately sustained.  On the other hand, plaintiff does not

22  meet his burden to show that his placement in ad seg on these occasions arose in any way in

23  relation to defendant Garcia or even as a result of other correctional officers not parties to this

24  action in an effort to harass him or retaliate against him for bringing this action.  As defendant

25  argues, if plaintiff believes he is being subjected to retaliation on the part of non-parties, he may

26  bring a separate action.  However, it appears to be largely plaintiff's own actions that may be

1   hindering him in proceeding in this action.  This court finds that plaintiff has not shown good

2   cause for issuance of a protective order; in other words, plaintiff does not demonstrate that

3   without such an order, he would be significantly impeded from litigating this action.  Plaintiff's

4   motion for a protective order will, therefore, be denied.

5   Additional Motions brought by Plaintiff

6               *Plaintiff's Motions to Compel Discovery, to Modify the Discovery*
                *& Scheduling Order, for an Extension of Time to [serve]*
7               *Discovery, and to Stay the Court's ruling on defendant's Motion*
                *for Summary Judgment*

8

9               Plaintiff asserts in his belatedly filed motion for an extension of time to serve his

10  discovery requests that he would withdraw his motion to compel (docket # 33) if he were granted

11  an opportunity to serve his discovery requests, including interrogatories, requests for admission

12  and requests for production of documents, upon defendant.  See docket # 39.   Plaintiff believes

13  he has shown good cause for the court to modify the discovery and scheduling order, again in a

14  motion brought beyond the discovery deadline.  See docket # 41.  His motion to compel, with its

15  attached 21 interrogatories, has previously been referenced.  Plaintiff's basis for seeking the

16  court's special consideration is based largely on the representations he has made in his motion for

17  preliminary injunction and defendant has opposed (docket # 35) plaintiff's motion to compel

18  (docket # 33) on the ground that prior to plaintiff's bringing the motion to compel, defendant had

19  never been served with the interrogatories and even if he had been, they would have been served

20  untimely.

21              Defendant filed his motion for summary judgment, on March 26, 2012 (docket #

22  36), in accordance with the March 30, 2012, deadline set forth for the filing of dispositive

23  motions in the discovery and scheduling order (docket # 27).  In his motion for the court to

24  continue defendant's dispositive motion, pursuant to Fed. R. Civ. P. 56(f) (docket # 43), by

25  which he no doubt intends to invoke Rule 56(d), plaintiff contends that, even as of the date of

26  that filing, on April 9, 2012, he had yet been unable to serve his requests for production of

12

1   documents upon defendant Garcia, as well as his requests for admission and interrogatories.

2   Plaintiff again references his ad seg placements, his placement on lockdown and his lost

3   documents; however, plaintiff does not tangibly represent that he has as yet even crafted his

4   requests for admission, and this court only has evidence of plaintiff's interrogatories, whenever

5   drafted, and does not have sufficient evidence of his requests for production.  Plaintiff's repeated

6   reference to lost documents appears to have been mooted inasmuch as defendant has indicated

7   (noted above) that he has previously received the documents plaintiff intended for him to have in

8   response to defendant's requests for production of documents.

9          Notwithstanding, the untimeliness of plaintiff's multiple (somewhat inconsistent)

10  requests (indicating that he is certainly not being hampered at this time in communicating with

11  the court), the court will continue its consideration of the defendant's motion for summary

12  judgment, pursuant to Fed. R. Civ. P. 56(d), and will direct defendant to file their responses to

13  the only discovery requests of which defendant and this court are aware at this late date.  That is,

14  defendant must provide to plaintiff, within fourteen days of the file date of this order, responses

15  to plaintiff's interrogatories listed in docket # 33; defendant is free to interpose apposite

16  objections but must nevertheless include substantive responses.  Plaintiff, however, will not be

17  granted any further opportunity to serve any other discovery requests that defendant has not yet

18  received, which means that plaintiff may not now serve additional requests in the form of

19  requests for requests for admission or requests for production of documents at this very late

20  point.  Once plaintiff has been provided the interrogatory responses from defendant, he will have

21  thirty days to provide any opposition to the pending dispositive motion.

22  Plaintiff's Motions to Appoint Counsel

23         Plaintiff has requested the appointment of counsel.  The United States Supreme

24  Court has ruled that district courts lack authority to require counsel to represent indigent

25  prisoners in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In

26  certain exceptional circumstances, the court may request the voluntary assistance of counsel

1  pursuant to 28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991);

2  Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In the present case, the court

3  does not find the required exceptional circumstances because plaintiff's claim of a denial of his

4  constitutional right to access the courts against a single remaining defendant is a straightforward

5  issue which does not appear to involve legal complexity.  Plaintiff's requests for the appointment

6  of counsel will therefore be denied.

7           Accordingly, IT IS ORDERED that:

8           1.  Plaintiff's motion for a preliminary injunction construed as a motion for a

9  protective order, filed on March 26, 2012 (docket # 37), is denied;

10          2.  Plaintiff's request that his motion for an order compelling discovery, filed on

11  March 2, 2012 (docket # 33), be withdrawn is granted;

12          3.  Plaintiff's motion for an extension of time to file discovery until April 5, 2012,

13  filed on March 28, 2012 (docket # 39), is denied as moot;

14          4.  Plaintiff's motion to modify the [Discovery and] Scheduling Order, filed on

15  March 28, 2012 (docket # 41), is denied as moot;

16          5.  Plaintiff's motion to stay or continue the ruling on defendant's motion for

17  summary judgment, pursuant to Fed. R. Civ. P. 56(d), filed on April 9, 2012 (docket # 43), is

18  granted to this extent: defendant must serve plaintiff with responses to the interrogatories

19  propounded by plaintiff that are located at docket # 33, within fourteen days, after which plaintiff

20  will have thirty days to file any opposition to defendant's pending summary judgment motion.

21  Defendant must file any reply to the opposition within seven days of its being filed after which

22  the dispositive motion will be deemed submitted.

23          6.  Plaintiff's requests for appointment of counsel, filed on March 27, 2012

24  (docket # 38), and on April 13, 2012 (docket # 44) are denied.

25  DATED: April 27, 2012

                      /s/ Gregory G. Hollows
26                 UNITED STATES MAGISTRATE JUDGE

                            14