1

2

3

4

5

6

7                     IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11  JACOBY POPE,

12              Plaintiff,              No. 2:11-cv-0101 LKK AC P

13         vs.

14  R. GARCIA, et al.,                  FINDINGS AND RECOMMENDATIONS

15              Defendant.

16  _____/

17              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18  1983 for alleged deprivation of his First and Fourteenth Amendments rights by interference with

19  his legal mail.  Before the court is defendant Garcia's motion for summary judgment, which has

20  been fully briefed.  See ECF No. 36 (motion); ECF No. 47 (plaintiff's opposition); ECF No. 48

21  (defendant's reply); ECF No. 50 (plaintiff's superseding "amended opposition").  All other

22  defendants have been previously dismissed from the action.  See ECF No. 30.

23                                    FACTS

24              The following facts are undisputed unless otherwise noted.  At all relevant times,

25  plaintiff was an inmate at California State Prison – Sacramento (CSP-SAC) and defendant

26  Garcia was a correctional officer at the institution.   Garcia was assigned to the Investigative

1

1  Services Unit (ISU), and his responsibilities included the investigation of illegal activity at the

2  prison, including drug trafficking and gang activity.[1]  On May 29, 2009, Garcia approached

3  plaintiff on the prison yard.  Garcia was holding a video cassette, and informed plaintiff that it

4  had been removed from a box of materials sent to plaintiff by an attorney named Paul Echols.

5  The box had been opened and inspected outside plaintiff's presence and without his knowledge.

6  Plaintiff contends, and defendant does not dispute, that the videotape contained a recording of

7  his "interrogation."  Jacoby Pope Decl. (ECF No. 47-1, Ex. A).  Plaintiff's father had hired

8  attorney Echols to obtain and provide to plaintiff the files and materials necessary for preparation

9  of a habeas petition challenging plaintiff's conviction, after plaintiff's trial counsel refused to

10  cooperate.  See Joseph Pope Decl. (ECF No. 47-1, Ex. H).  Garcia told plaintiff that the

11  videotape was contraband and had to be returned to Echols, and that plaintiff needed to sign a

12  trust account withdrawal form to pay for the return postage.  Plaintiff signed the withdrawal

13  slip.[2]  Jacoby Pope Decl. (ECF No. 47-1, Ex. A); Garcia Decl. (ECF 36-2, Ex. A).

14        The parties dispute the circumstances of the videotape's discovery.  Defendants

15  present evidence that the package was originally delivered in error to Folsom State Prison, which

16  is next door to CSP-SAC.  Garcia was contacted by an ISU officer at Folsom, who told him that

17  the box had been opened before staff determined that the addressee was not housed at Folsom.

18  Staff at Folsom believed that the package contained contraband, most likely a cellular phone.

19  Garcia Decl. (ECF 36-2, Ex. A) at ¶¶ 4-5.  Plaintiff disputes these facts, relying on the

20  declarations of three inmates who witnessed the conversation between Garcia and plaintiff and

21  report that Garcia never said the box had been opened at Folsom.  Gallegos Decl. (ECF No. 47-1,

22

23     [1]  Plaintiff contends that Garcia was part of the Institutional Gang Investigations unit
   (IGI) , a subdivision of the ISU.  The difference, if any, is immaterial.  See Kukrall Dec. (ECF

24  No. 48-1) ¶¶ 2-4.  Plaintiff's suggestion that Garcia was part of concerted IGI campaign of
harassment against him is factually unsupported and immaterial to the motion before the court.

25
   [2]  The complaint alleges that plaintiff was "forced" to sign the withdrawal form.

26  Complaint (ECF No. 1) at 4.

Ex. B); Perks Decl. (ECF No. 47-1, Ex. C); Rowe Decl. (ECF No. 47-1, Ex. D).  Plaintiff

declares that Garcia acknowledged being the one who had opened the box.  Jacoby Pope Decl.

(ECF No. 47-1, Ex. A).

Garcia declares that he retrieved the package from Folsom and brought it to the

ISU office at CSP-SAC.  Defendant presents evidence that the box indicated that it was sent

from Attorney Paul Echols, but that it was not marked "legal mail" or "confidential."  Garcia

Decl. (ECF 36-2, Ex. A) at ¶ 7.  Plaintiff offers declarations to the contrary from Echols and

from plaintiff's father, to whom the box was eventually returned.  Echols Decl. (ECF No. 47-1,

Ex. G); Joseph Pope Decl. (ECF No. 47-1, Ex. H).  Plaintiff also presents the declaration of an

inmate who overheard Garcia tell plaintiff that the video cassette "had been extracted from a box

marked legal mail and that the box had legal paperwork."  Perks Decl. (ECF No. 47-1, Ex. C).

Inmate Rowe also heard Garcia state that he had opened plaintiff's legal mail.  Rowe Decl. (ECF

No. 47-1, Ex. D).

Garcia declares that he contacted Echols by telephone and inquired about the

contents of the package.  According to Garcia, Echols reported that the box contained a

videotape and, when informed that plaintiff was not permitted to possess a videotape, instructed

Garcia to return it to him.  Garcia removed the tape from the package pursuant to Echols'

instructions.  Garcia Decl. (ECF 36-2, Ex. A) at ¶¶ 7-9.  Echols denies that he spoke to Garcia or

any officer from the prison, and denies that he authorized return of the tape.  Echols Decl. (ECF

No. 47-1, Ex. G).

Inmates are prohibited by 15 Cal Code Regs. § 3006 from possessing materials

that present a serious threat to facility security or the safety of inmates and staff.  Pursuant to this

regulation, defendant contends that inmates are not allowed to possess VHS cassette tapes

because the plastic can be fashioned into a weapon.  Additionally, inmates do not possess the

means by which to watch video cassettes at the prison, as VCRs are not available for inmate use.

Garcia Decl. (ECF 36-2, Ex. A) at ¶ 10; Administrative Appeal Log. No. SAC-09-00967

(attachment to Young Decl. (ECF 36-2, Ex. C)) (finding on administrative review that the videotape constituted contraband and plaintiff lacked ability to view it).  In response to this showing plaintiff provides the administrative response to his May 2012 request for interview, advising that arrangements for him to view a videotape could be made through the Disciplinary Office.  (ECF No. 47-1, Ex. N).

Before bringing the videotape and trust withdrawal slip to plaintiff, Garcia turned the rest of the package over to the Facility B Watch Office.  He informed staff that the package could be issued to plaintiff.  Garcia Decl. (ECF 36-2, Ex. A) at ¶ 11.  After plaintiff signed the trust withdrawal slip, Garcia brought the videotape to the prison mail room and had no further involvement in the matter.  Garcia Decl. (ECF 36-2, Ex. A) at ¶ 14.  Plaintiff disputes Garcia's lack of further involvement, as set forth below.

It is undisputed that three other correctional officers appeared at plaintiff's cell later in the day with the box that had been sent to plaintiff by Echols.  The box had been opened. Plaintiff insisted that a supervising officer photograph the opened box and log its contents before he would accept delivery.  This request was not granted, and the box was taken away.  Pope Dep. (ECF 36-2, Ex. B) at 29-30.  When plaintiff administratively appealed the alleged tampering with his legal mail, prison authorities found that he had "refused" delivery of the box. Administrative Appeal Log. No. SAC-09-00967 (attachment to Young Decl. (ECF 36-2, Ex. C)).  Plaintiff forcefully disputes this characterization.  Pope Dep. (ECF 36-2, Ex. B) at 33-34, 57-58.

To support his allegations that Garcia was ultimately responsible for sending the box back out of the prison, plaintiff declares that the officers who brought him the box told him they would take it back to Officer Garcia.  Jacoby Pope Decl. (ECF No. 47-1, Ex. A).  Plaintiff also points to the declaration of an inmate who reports hearing Officer McKnight tell plaintiff that he (McKnight) had turned the box over to Garcia.  Moten Decl. (ECF 47-1, Ex. K).  In rebuttal, defendant has submitted a declaration from McKnight denying that he made such a statement and stating that he does not recall where the box went after plaintiff refused to accept

1   it.  McKnight Decl. (ECF No. 48-2).

2          It is undisputed that plaintiff never took possession of the box, which was sent

3   back to attorney Echols.  Plaintiff presents evidence that the box was ultimately retrieved from

4   Echols by plaintiff's father, who could not afford to mail it back to the prison.  Joseph Pope

5   Decl. (ECF No. 47-1, Ex. H).  Without access to his legal materials, plaintiff avers that he was

6   unable to timely file his habeas petition.  Plaintiff is now procedurally barred from seeking

7   federal habeas relief.  Jacoby Pope Decl. (ECF No. 47-1, Ex. A).

8          To demonstrate his need for the materials in the box, plaintiff relies on his

9   correspondence with Assistant Federal Defender Ann McClintock, who never represented him

10  but who provided information about the statute of limitations applicable in habeas.  In a letter

11  dated June 26, 2009, McClintock advised plaintiff that his filing deadline appeared to be June 10,

12  2009, and that he should file as soon as possible.  McClintock Ltr. (ECF No. 47-1, Ex. J).

13  Plaintiff also points to the docket in Case No. 2:09-cv-0718 JFM P.  Docket Sheet (ECF No. 47-

14  1, Ex. M).  The court takes judicial notice of this habeas case,[3] in which plaintiff sought repeated

15  extensions of time to file a habeas petition.  Case No. 2:09-cv-0718 JFM P was opened on March

16  16, 2009 and closed on July 10, 2009.  No habeas petition was filed.

17                  STANDARDS FOR SUMMARY JUDGMENT UNDER RULE 56

18          Summary judgment is appropriate when it is demonstrated that there exists "no

19  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

20  law."  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

21          always bears the initial responsibility of informing the district
            court of the basis for its motion, and identifying those portions of
22          "the pleadings, depositions, answers to interrogatories, and
            admissions on file, together with the affidavits, if any," which it
23          believes demonstrate the absence of a genuine issue of material
            fact.

24

25          [3]   Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80
    F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126
26  (1981).

                                          5

1  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

2  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

3  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

4  answers to interrogatories, and admissions on file.'" Id. at 324.   Indeed, summary judgment

5  should be entered, after adequate time for discovery and upon motion, against a party who fails

6  to make a showing sufficient to establish the existence of an element essential to that party's

7  case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete

8  failure of proof concerning an essential element of the nonmoving party's case necessarily

9  renders all other facts immaterial."  Id. at 323.   In such a circumstance, summary judgment

10 should be granted, "so long as whatever is before the district court demonstrates that the standard

11 for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

12         If the moving party meets its initial responsibility, the burden then shifts to the

13 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15 establish the existence of this factual dispute, the opposing party may not rely upon the

16 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17 form of affidavits, and/or admissible discovery material, in support of its contention that the

18 dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party

19 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

21 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

23 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

24 1436 (9th Cir. 1987).

25         In the endeavor to establish the existence of a factual dispute, the opposing party

26 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

1  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

2  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

3  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

4  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

5  committee's note on 1963 amendments).

6        In resolving the summary judgment motion, the court examines the pleadings,

7  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

9  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

10 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

11 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

15 show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

16 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

17 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

18        In applying these rules, district courts must "construe liberally motion papers and

19 pleadings filed by pro se inmates and . . . avoid applying summary judgment rules strictly."

20 Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  Plaintiff has been provided notice of

21 the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil

22 Procedure, as required by Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), and

23 Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).  ECF Nos. 9, 49.

24 ////

25 ////

26

DISCUSSION

Plaintiff claims that his constitutional rights were violated by interference with his mail and obstruction of his access to the courts.[4]  Defendant Garcia seeks summary judgment on the grounds that the First Amendment claims fail as a matter of law, and that he is entitled to qualified immunity.

*Interference With Mail*

Prison inmates have a First Amendment right to send and receive mail.  See Witherow v. Paff, 52 F.3d 264, 265 (9th Cir.1995) (per curiam) (citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989)).   Nevertheless, prison officials "may adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.' " Witherow, 52 F.3d at 265 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).   Prison authorities may, for example, intercept and censor outgoing inmate correspondence that would transmit escape plans, proposed criminal activity, or encoded messages.  See Procunier v. Martinez, 416 U.S. 396, 413 (1974); see also Witherow, 52 F.3d at 266.

The Supreme Court has long held that mail from an attorney to a prisoner may be opened in the presence of the prisoner and that prison officials may require both that the letters be specially marked with the name and address of the attorney and that the attorney communicate first with prison officials.  Wolff v. McDonnell, 418 U.S. 539, 575-77 (1974).  The Supreme Court has never, however, considered whether a prisoner has a constitutional right to be present when his legal mail is opened by prison officials.  The Ninth Circuit has expressly left

---

[4] Defendant contends that plaintiff has presented only an access to courts claim, and not a separate claim for interference with mail.  Reply (ECF No. 48) at 1.  The complaint states as "Legal Claims" both "deprivation of [plaintiff's] right of meaningful access to the court" and "confiscation and mail back deprived plaintiff of his property . . ."  Given the liberality with which the court must construe the pleadings of a pro se inmate, United States v. Ten Thousand Dollars ($ 10,000.00) in U.S. Currency, 860 F.2d 1511, 1513 (9th Cir. 1988), both putative claims will be addressed.

1   this question open.  Sherman v. MacDougall, 656 F.2d 527, 528 (9th Cir. 1981) (noting that

2   other circuits have found such a right, but declining to reach the question); see also, Samonte v.

3   Maglinti, CIV 05-00598 SOM-BMK, 2007 WL 1963697 *7 (D. Haw. July 3, 2007) (recognizing

4   that the question remains an open one in the Ninth Circuit).

5              Defective mail-handling procedures may under some circumstances violate an

6   inmate's First Amendment right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346

7   (1996); Bounds v. Smith, 430 U.S. 817, 821-22 (1977).   However, an isolated instance of the

8   opening of an inmate's legal mail outside the inmate's presence does not implicate a

9   constitutional right.  Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir.1989) (negligence in the

10  mishandling of prisoner mail insufficient to support § 1983 liability).

11             Pursuant to these authorities, the opening of plaintiff's package and initial

12  removal of the video cassette (as distinct from the return of those items to Echols) cannot support

13  relief.  The factual disputes regarding Garcia's role in the opening of the package, and whether

14  the package was marked "legal mail," are immaterial because the allegations fail to state a claim

15  in light of Stevenson.  Summary judgement is appropriate on that basis.  Moreover, there was no

16  clearly established rule at the time of the incident that opening legal mail outside the presence of

17  an inmate violates the constitution.  Sherman, 656 F.2d at 528.  Accordingly, Garcia is entitled to

18  qualified immunity.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

19                    *Access to the Courts*

20             Prison inmates have a constitutionally protected right to access the courts in order

21  to bring challenges to their criminal convictions and to the conditions of their confinement.

22  Lewis v. Casey, 518 U.S. 343, 354-55 (1996).  Prison officials may not actively interfere with an

23  inmate's ability to access the courts.  Silva v. Di Vittorio, 658 F.3d 1090, 1102-03 (9th Cir.

24  2011).  When a prisoner alleges such interference, he must demonstrate actual injury such as the

25  inability to meet a filing deadline or to present a non-frivolous claim.  Lewis, 518 U.S. at 348-49,

26  352-53 & n.3; Nevada Dept. of Corr. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011) cert.

1  denied, 132 S. Ct. 1823 (2012); Silva, 658 F.3d at 1102-03.  Actual injury is a jurisdictional

2  requirement and may not be waived.  Nevada Dept. Of Corr., 648 F.3d at 1018 (citing Lewis,

3  518 U.S. at 349).

4            Defendant Garcia argues that he is entitled to summary judgment because the

5  undisputed facts show that he did not personally deprive plaintiff of the package or cause its

6  return.  Plaintiff has demonstrated the existence of disputed facts regarding a host of issues:

7  whether or not the package was marked "legal mail" or "confidential;" whether or not Garcia

8  called Echols before removing the videotape from the package; whether or not the videotape

9  could have remained at the prison for viewing by plaintiff; and whether or not plaintiff "refused"

10  the package.  However, the existence of factual disputes will not defeat summary judgment

11  where the disputed facts are not material.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-248.

12  Disputed facts are rendered immaterial when there is a complete failure of proof on an essential

13  element of plaintiff's claim.  Celotex, 477 U.S. at 323.  On the central factual issue whether

14  Garcia was personally responsible for sending plaintiff's legal materials back out of the prison,

15  plaintiff has not demonstrated a triable issue of fact.

16            The only direct evidence before the court on this issue is Garcia's declaration.[5]

17  Garcia Decl. (ECF 36-2, Ex. A).  Plaintiff vigorously disputes Garcia's credibility, but argument

18  is not evidence.  See Rule 56(e) (party opposing summary judgment must not rely on allegations

19  or denials but must tender evidence of facts).  None of plaintiff's declarants, including himself,

20  have personal knowledge of the facts surrounding the return of the package.  Plaintiff attempts to

21  create an evidentiary dispute about whether or not other officers indicated that they were going

22  to return, or had returned, the package to Garcia after plaintiff insisted on having it inventoried.

23  Even accepting plaintiff's declarations as true, none of those statements are sufficient to raise a

24

25            [5]  The administrative appeal log demonstrates that internal investigation corroborated
   Garcia's version of events.  Administrative Appeal Log. No. SAC-09-00967 (attachment to
26  Young Decl. (ECF 36-2, Ex. C)).

1   genuine factual dispute regarding the circumstances of the package's return.[6]  Plaintiff provides a

2   mail log (ECF No. 47-1, Ex. F) that documents the "return to sender" of the box on June 19,

3   2009, but the log does not indicate who authorized the return.  Garcia's role in the package's

4   return is dispositive, because he cannot be held liable without an individualized showing that he

5   caused the interference with plaintiff's access to the courts.  Leer v. Murphy, 844 F.2d 628, 633

6   (9th Cir. 1988) (liability under § 1983 requires affirmative conduct by the individual defendant

7   that causes the constitutional deprivation).[7]  The undersigned has carefully reviewed the record

8   for evidence sufficient to create a triable factual dispute on this question, and has found none.

9   Plaintiff has therefore failed to make a showing sufficient to establish an essential element of his

10   case.  See Celotex, 477 U.S. at 322.

11          The record does demonstrate a genuine factual dispute regarding Garcia's

12   responsibility for depriving plaintiff of the videotape.  It is undisputed that Garcia seized the

13   videotape and arranged for its return to Echols as contraband.  Plaintiff has proffered evidence

14   that it should have been possible for the tape to be held by prison authorities so that he could

15   view it, even if he could not keep it in his cell.  However, plaintiff may only proceed on the basis

16   of the videotape alone only if deprivation of the videotape caused actual injury in the form of

17   forfeited or impeded non-frivolous claims.  Lewis v. Casey, 518 U.S. at 349.  As the undersigned

18   now explains, plaintiff has failed to demonstrate the existence of actual injury from deprivation

19   of the videotape or the legal materials as a whole.

20          Plaintiff alleges that without the box of materials, including the videotape, he

21

22   [6]  No declarant claims to have heard Garcia admit that he ordered, participated in,  or
     personally accomplished the return of the package to Echols.  At most, plaintiff's declarations

23   suggest that Garcia may have been involved in the chain of custody of the package prior to its
     return.

24   [7]  The brief period during which the package was held prior to its return likely did not
     rise to the level of a constitutional violation.  See Vigliotto v. Terry, 873 F.2d 1201, 1202-1203

25   (9th Cir. 1989) (holding that a temporary deprivation of inmates' legal materials, lasting three
     days, did not rise to constitutional proportions).  In any case, plaintiff has not produced evidence

26   that Garcia bore any responsibility for the fate of the package after May 29, 2009.

could not prepare his habeas petition.  Plaintiff specifies that he wished to develop and present

claims of (1) prosecutorial misconduct by the suppression of and failure to preserve exculpatory

evidence, failure to disclose law enforcement efforts to interview a material witness, and

improper statements to the jury; (2) violation of his <u>Miranda</u> rights during the interview recorded

on the videotape; and (3) ineffective assistance of counsel by the failure to impeach a key

prosecution witness with forensic evidence, failure to disclose a plea deal, failure to object to the

prosecutor's inflammatory statements, and the failure to investigate and challenge identification

procedures.  Jacoby Pope Decl. (ECF No. 47-1, Ex. A).   Plaintiff asserts that his AEDPA

deadline was June 10, 2009, and that the petition could not be prepared without the videotape

and transcripts.  <u>Id.</u>

Plaintiff's showing is insufficient to establish actual injury.  For purposes of

analysis, the undersigned will assume that plaintiff's habeas claims are non-frivolous.  It is not

enough, however, for plaintiff merely to assert that these claims could not be presented without

the contents of the box.  Plaintiff has not identified specific items in the box that were necessary

for the pleading of particular claims.  Because plaintiff was present at his own interrogation and

had identified the existence of an alleged <u>Miranda</u> violation, he was indisputably in possession of

the basic facts necessary to plead his <u>Miranda</u> claim without review of the videotape.  That he

might have done a more thorough job with access to the tape does not mean that he was unable

to present his claim.[8]  Several of plaintiff's other putative habeas claims are based either on facts

that were necessarily known to him during the limitations period, or on suspected facts (such as

those regarding suppressed and/or destroyed exculpatory evidence) that could not have been

---

[8]  In a somewhat analogous context, courts have denied requests for equitable tolling
based on lack of access to transcripts and legal files when claims could have been presented
without them and supplemented later.  <u>See</u>, <u>e.g.</u>, <u>Gassler v. Bruton</u>, 255 F.3d 492, 495 (8th Cir.
2001) (rejecting equitable tolling based on delay in receiving trial transcripts because petition
could have been filed without transcripts and, if necessary for decision of the issues raised, the
court could have ordered production of the transcript).

1  contained in documents inside the box.[9]

2          Moreover, even assuming the legal materials were necessary to preparation of a

3  habeas petition, the undisputed facts are insufficient as a matter law to establish that return of the

4  box caused plaintiff's inability to file.  The videotape and legal papers were received by the

5  prison on May 29, 2009, less that two weeks before the date plaintiff identifies as his filing

6  deadline.  Even if Garcia bore responsibility for sending back the box, he would have deprived

7  plaintiff of his legal materials only during the final two weeks of the one-year limitations period.

8  These facts are insufficient as a matter of law to prove that defendant's actions – or the actions of

9  anyone at CSP-SAC – actually injured plaintiff by preventing him from filing by June 10, 2009.

10  Plaintiff's declarations establish that he was unable to access his legal materials prior to May 29,

11  2009 because of his trial lawyer's failure to cooperate and his father's ill health and financial

12  constraints.  To the extent that plaintiff needed the legal files to prepare his petition, those

13  circumstances appear to be the primary causes of impeded access to the files during the

14  limitations period.   These circumstances, in combination, may well have supported equitable

15  tolling.  See Lott v. Mueller, 304 F.3d 918, 924-25 (9th Cir. 2002) (equitable tolling may be

16  appropriate on basis of 82-day deprivation of legal materials in combination with other factors).

17  They do not however, provide a legally sufficient factual basis for a conclusion that defendant's

18  acts caused plaintiff's alleged inability to file a habeas petition.

19          The habeas lawyer who advised plaintiff about the statute of limitations, albeit

20  after the deadline may have passed, recommended that plaintiff file a protective petition right

21  away and attempt to amend it later following the exhaustion of state remedies.  McClintock Ltr.

22  _____

23      [9] Plaintiff's claim that he could not prepare a petition without access to the legal
    materials is further called into question by the fact that he did file a habeas petition in state court
24  on March 6, 2009.  See McClintock Ltr. (ECF No. 47-1, Ex. J).  Because the record in this case
    does not include that petition, the undersigned cannot be confident that it involved the same
25  challenges to plaintiff's conviction that he wanted to bring in federal court.  The habeas lawyer
    who corresponded with plaintiff advised him that he might be entitled to statutory tolling of the
26  limitations period for the time the superior court petition was pending.  Id.

(ECF No. 47-1, Ex. J).  This plaintiff did not do.  Had plaintiff filed a petition based on the facts known to him, either prior to June 10, 2009 or upon receipt of McClintock's letter, he may well have preserved his ability to challenge his conviction.

For all these reasons, the record before the court is insufficient as a matter of law to establish that defendant caused an actual injury to plaintiff's access to the courts.  Summary judgment is appropriate on this basis.  Accordingly, the undersigned does not reach the question of qualified immunity.

Accordingly, IT IS RECOMMENDED that defendant's motion for summary judgment (ECF No. 36) be granted and judgment be entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Courts order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 1, 2013.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
pope0101.msj.AC rev

14